UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EAST COAST RESOURCES, LLC,

                        Plaintiff(s),        MEMORANDUM
                                            OPINION AND ORDER

       -against-                           CV 07-2954 (ETB)

TOWN OF HEMPSTEAD,

                        Defendant(s).
------------------------------------------------------------------------X

       Before the court is the defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes the motion, asserting that there are issues of fact that necessitate a trial. For the following reasons, defendant's motion is granted in part and denied in part.

<u>FACTS</u>

       On or about July 13, 2004, defendant, the Town of Hempstead (the "Town"), awarded the plaintiff, East Coast Resources, LLC ("ECR"), contract number 34-2004, which governed the removal and transportation of certain agricultural waste from two Town-operated transfer facilities located in Oceanside and Merrick, New York to out-of-state recycling and composting facilities. (Def. R. 56.1 Statement ("Def. 56.1") ¶ 1; Pl. R. 56.1 Statement ("Pl. 56.1") ¶ 1.) The initial contract period was a two-year term, from July 13, 2004 through March 31, 2006, with three one-year extensions available "at the Town's option." (Def. 56.1 ¶¶ 2, 4; Pl. 56.1 ¶¶ 2; 4; Riverso Decl., Ex. A at 5.)

While the contract did not provide for any minimum amount of agricultural waste to be shipped by ECR, expressly stating that "[n]o guarantee is given as to amounts of agricultural waste that will be available for shipping," it did provide the estimated payments to be made each year that the contract was in effect.[1]  (Riverso Decl., Ex. A at 5.)  Nothing in the contract specifies whether either party is entitled to recover its lost profits in the event of a breach.  (Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.)  On January 17, 2006, approximately two months prior to the expiration of the initial contract period, the Town exercised its option to extend the contract for one additional year, with the extension terminating March 31, 2007.  (Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6.)

By letter dated March 24, 2006, ECR advised the Commissioner of Sanitation, Richard T. Ronan ("Ronan"), that the parties had "a few issues" that needed addressing.  (Riverso Decl., Ex. D.)  Specifically, ECR advised Ronan that although pursuant to the parties' contract, "agricultural waste" is defined as "0% of contaminates in the material," the waste ECR was collecting from the Town contained "15% contaminates on average."[2]  (Riverso Decl., Ex. D.)  ECR informed Ronan that the presence of contaminates in the agricultural waste was "going to create a prohibitive situation from [its] recycling vendor," and enclosed a letter from one of its vendors, Nature's Choice, to demonstrate its point.  (Riverso Decl., Ex. D.)  ECR further advised Ronan that it had been notified by its other "organic recycler" that the product was "unacceptable," and enclosed that letter as well.  (Riverso Decl., Ex. D.)  ECR requested "a more

---

[1]  The contract expressly stated that the "tonnage amounts [were] **ESTIMATES ONLY**," which would be used "for evaluation purposes" and "[did] not represent actual amounts anticipated to be received by the Department of Sanitation."  (Riverso Decl., Ex. A at 6.)

[2]  Prior to this letter, in June 2005, plaintiff sent photographs and a video to the Town depicting the mixing of agricultural and non-agricultural waste by the Town.  (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.)

stringent 'calling' of the material into proper contractual classifications." (Riverso Decl., Ex. D.)

ECR continued to perform its waste removal services for the Town until March 31, 2007. (Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9.) On January 8, 2007, the Town exercised its option to renew the parties' contract for an additional year, terminating on March 31, 2008. (Def. 56.1 ¶ 10; Pl. 56.1 ¶ 10; Riverso Decl., Ex. E.) However, by letter dated February 9, 2007, ECR advised Ronan that due to certain circumstances outlined in the letter, it "must decline [the Town's] extension request." (Riverso Decl., Ex. E.) According to ECR's February 9, 2007 letter, its recycling vendor refused to accept any waste after March 1, 2007 without payment of a disposal fee that was ninety-five percent (95%) higher than the rate ECR was currently paying. (Riverso Decl., Ex. E.) Since "the new disposal rate . . . exceed[ed] the amount that the Town propose[d] to pay [ECR] for both transportation and disposal," ECR asserted that it "ha[d] no alternative but to decline the requested contract extension."[3] (Riverso Decl., Ex. E.) On March 28, 2007, ECR advised the Town that it would not perform under the parties' contract after March 31, 2007. (Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12; Compl. ¶ 53.)

On April 17, 2007, the Town Council of the Town of Hempstead passed a resolution declaring that ECR was in breach of the parties' contract and recommended that the Town commence litigation to recover damages sustained as a result of ECR's purported breach. (Def. 56.1 ¶ 15; Pl. 56.1 ¶ 15; Riverso Decl., Ex. G.) Before the Town could do so, however, ECR commenced the instant litigation in the Eastern District of Virginia, alleging that the Town had breached the parties' contract by commingling agricultural and non-agricultural waste. (Def.

---

[3] ECR asserts that the Town had already breached the parties' contract by mixing agricultural and non-agricultural waste together prior to ECR's rejection of the contract extension. (Pl. 56.1 ¶ 11.)

56.1 ¶ 16; Pl. 56.1 ¶ 16.) ECR seeks lost profits for the last two years of the contract extension options that ultimately did not come to fruition, from April 2007 to March 2009. (Def. 56.1 ¶ 20; Pl. 56.1 ¶ 20.) ECR also seeks lost profits stemming from an oral agreement it had to act as a subcontractor for the agricultural waste removal vendor for the County of Westchester (the "Westchester Subcontract"), which ECR asserts it was forced to abandon as a result of the termination of its contract with the Town. (Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21.) ECR did not file a written verified claim with the Town Clerk regarding its breach of contract claim against the Town prior to instituting litigation. (Def. 56.1 ¶ 17; Pl. 56.1 ¶ 17.)

The Town now seeks summary judgment on the ground that ECR's failure to file a written verified claim against the Town before commencing litigation, as required under New York Town Law § 65(3), is fatal to this action. The Town further asserts that even if the Court excuses ECR's failure to file a notice of claim, ECR cannot recover its lost profits under the parties' contract because there was no contract in place for the time period for which ECR is seeking damages. Finally, the Town asserts that ECR cannot recover its lost profits under the Westchester Subcontract because such damages were not foreseeable to the parties at the time of contracting.

## Discussion

I. Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is

on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

Summary judgment should not be regarded as a procedural shortcut, but rather as an

integral part of the Federal Rules of Civil Procedure, which are designed to "secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327. Rule 56 must be "construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those persons "opposing such claims and defenses to demonstrate, . . . prior to trial, that the claims and defenses have no factual basis." Id. By its terms, Rule 56 does not require that a trial judge make any findings of fact. See Anderson, 477 U.S. at 250. The only inquiry to be performed is the determination of whether there is a need for trial. See id. The court's principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id

II.  The Notice of Claim Requirement

Pursuant to New York Town Law Section 65,

> [N]o action shall be maintained against a town upon or arising out of a contract entered into by the town unless the same shall be commenced within eighteen months after the cause of action thereof shall have accrued, nor unless a written verified claim shall have been filed with the town clerk within six months after the cause of action shall have accrued, but no such action shall be brought upon any such claim until forty days have elapsed after the filing of the claim in the office of the town clerk.

N.Y. Town Law § 65(3). "A properly verified notice of claim is a condition precedent to maintaining an action to recover damages for breach of contract against a town." ADC Contracting & Constr., Inc. v. Town of Southampton, 850 N.Y.S.2d 121, 122 (2d Dep't 2007)

(citing N.Y. Town Law § 65(3)).

"The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without expense and risks of litigation." Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 794 (2d Cir. 1999) (citations omitted). For these reasons, New York courts strictly construe notice of claim requirements. See, e.g., id. ("Notice of claim requirements are construed strictly by New York state courts."); Hyde v. Arresting Officer Caputo, No. 98 CV 6722, 2001 U.S. Dist. LEXIS 6253, at *13 (E.D.N.Y. May 11, 2001) (same); Gorman v. Town of Huntington, 12 N.Y.3d 275, 279 (2009) ("Prior written notice provisions, enacted in derogation of common law, are always strictly construed."). "Failure to comply with provisions requiring notice and presentment of claims prior to the commencement of litigation ordinarily requires dismissal." Hyde, 2001 U.S. Dist. LEXIS 6253, at *13-14 (quoting Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 62 (1984)); see also Hardy, 164 F.3d at 794. The New York Court of Appeals has recognized, however, that "peculiar circumstances," such as those constituting waiver or estoppel, may prevent dismissal for failure to comply with statutory notice of claim requirements. See Hyde, 2001 U.S. Dist. LEXIS 6253, at *14 (citing Salesian Socy., Inc. v. Village of Ellenville, 41 N.Y.2d 521, 522 (1977)) (additional citation omitted).

There is no dispute in the within action that plaintiff failed to file a notice of claim prior to commencing litigation. Plaintiff asserts, however, that its failure to do so should be excused on the grounds of waiver or estoppel. The Town contends that plaintiff's failure to file a notice of claim is fatal to its breach of contract claim, which is the only claim at issue herein, and therefore the entire action should be dismissed.

"To successfully invoke the doctrine of equitable estoppel, '[t]he plaintiff must have relied on the defendant's actions, and that reliance must have been justifiable.'" Drake v. Laboratory Corp. of Am. Holdings, No. 02-CV-1924, 2009 U.S. Dist. LEXIS 79355, at *8-9 (E.D.N.Y. Sept. 3, 2009) (quoting Mancuso v. Consolidated Edison Co., 905 F. Supp. 1251, 1258 (S.D.N.Y. 1995)) (additional citation omitted). Where a municipality "acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that [municipality] should be estopped from asserting a right or defense which it otherwise could have raised." Bender v. New York City Health & Hosps. Corp., 38 N.Y.2d 662, 667 (1976) (citations omitted). "By applying the doctrine of equitable estoppel to notice of claim situations, the courts may insure that statutes like [Town Law § 65(3)] do not become 'a trap to catch the unwary or the ignorant.'" Id. at 668 (quoting Sweeney v. City of New York, 225 N.Y. 271, 273 (1919)).

Several New York cases have applied estoppel to preclude the defendant from asserting the lack of a notice of claim as a defense, particularly where, as here, "defendant received actual notice of the claim and did not raise the issue of lack of formal notice for over two years, instead allowing the case to proceed through discovery . . . ." Lebanon Valley Landscaping, Inc. v. Town of Nassau, 596 N.Y.S.2d 587, 587-88 (3d Dep't 1993) (citations omitted); see also Steimel v. Incorporated Vill. of Rockville Centre, 965 F. Supp. 366, 368, 372-74 (E.D.N.Y. 1997) (applying estoppel where defendant failed to raise notice of claim issue until after a jury had been selected and the parties had made their opening statements). Other cases have found estoppel where the defendant engaged in misleading conduct that "lulled the plaintiff into sleeping on its rights to its detriment." See, e.g., Conquest Cleaning Corp. v. New York City Sch. Constr. Auth., 719

N.Y.S.2d 689, 690 (2d Dep't 2001) (citing cases).

In a similar action, Town of Smithtown v. Jet Paper Stock Corp., 578 N.Y.S.2d 244 (2d Dep't 1992), the defendant therein entered into a contract with the Town of Smithtown to remove recyclable materials from the Town's facility. See id. at 244. Although "a number of disputes" arose between the parties, the defendant continued to remove the recyclable materials while the parties "negotiated in an effort to resolve their differences." Id. At some point, negotiations broke down and the Town of Smithtown commenced a breach of contract action against Jet Paper Stock Corp. See id. Thereafter, the defendant interposed an answer that contained a number of counterclaims, but failed to first file a notice of claim against the Town. See id. The Town of Smithtown moved to dismiss the defendant's counterclaims on the grounds that it had failed to file a notice of claim. See id. The trial court denied the Town's motion. See id. In affirming the decision of the lower court, the Appellate Division held that the Town of Smithtown was estopped from raising the defendant's failure to file a notice of claim as a defense, stating that "[t]he Town had actual, timely knowledge of the defendant's claims and was not prejudiced by the lack of a formal notice of claim." Id. at 244-45.

The same result is warranted here. In the more than two years that this action has been pending, The Town of Hempstead never once raised the issue of ECR's failure to file a notice of claim as a defense to liability until practically the eve of trial when the parties appeared before the Court for a pretrial conference. It is not asserted in the Town's Answer; nor is it contained in the parties' joint pre-trial order. Moreover, when advised by ECR that it would no longer perform under the contract after March 31, 2007, and that ECR considered the Town to have breached the parties' contract, the Town Council passed a resolution authorizing the

commencement of litigation against ECR for breach of the same contract. Since the Town planned to pursue claims under the same contract as ECR - but just so happened to have lost the race to the courthouse - its "reliance upon the notice of claim requirement is more in the nature of a sword than a shield." Jet Paper Stock Corp., 578 N.Y.S.2d at 245. Such actions constitute "misleading conduct," which estops the Town from raising the notice of claim requirement at this stage of the action. Hartsdale Fire Dist. v. Eastland Constr., Inc., 886 N.Y.S.2d 454, 456 (2d Dep't 2009) (finding estoppel where petitioner initially moved to compel arbitration and later asserted a "plainly inconsistent position" that arbitration should be permanently stayed based on respondent's failure to file a notice of claim).

As stated supra, notice of claim statutes are "intended to foster early investigation of claims and to facilitate settlements prior to the initiation of litigation." Steimel, 965 F. Supp. at 372 (citing Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 42 (1985)). "Considering the amount of time and resources plaintiff has expended in preparation for trial, and the lack of any demonstrable prejudice to defendant, it would be inequitable and unreasonable to allow such a 'blindly technical barrier' to deprive plaintiff of its day in court." Lebanon Valley, 596 N.Y.S.2d at 588 (quotation omitted).

For the foregoing reasons, the Town is estopped from raising ECR's failure to file a notice of claim as a defense to liability in this action and that portion of the Town's summary judgment motion is denied.

II.     Lost Profits

"Contract damages are ordinarily intended to give the injured party the benefit of the

bargain by awarding a sum of money that will, to the extent possible, put that party in as good a position as it would have been in had the contract been performed." Goodstein Constr. Corp. v. City of New York, 80 N.Y.2d 366, 373 (1992) (citation omitted).  A prerequisite to recovering such damages, however, is the existence of a valid contract.  See Verzani v. Costco Wholesale Corp., 641 F. Supp. 2d 291, 298 (S.D.N.Y. 2009) (stating that the first element of a breach of contract claim is the existence of a "valid, enforceable contract"); see also Lava Trading Inc. v. Hartford Fire Ins. Co., No. 03 Civ. 7037, 2004 U.S. Dist. LEXIS 7618, at *5 (S.D.N.Y. Apr. 30, 2004) ("[T]here was no contract, and therefore no benefit of the bargain, to enforce."); Renner v. Chase Manhattan Bank, No. 98 Civ. 926, 2000 U.S. Dist. LEXIS 8552, at *57 (S.D.N.Y. June 14, 2000) (stating that "without a contract, there can be no breach").

Here, it is undisputed that the contract between the parties expired on March 31, 2006, with three one-year extensions available, solely at the election of the Town.  (Riverso Decl., Ex. A at 5.)  It is further undisputed that the Town opted to use the first of those extensions, with the contract therefore terminating on March 31, 2007.  While the Town sought to exercise its second option to extend the parties contract in 2007, by letter dated February 9, 2007, ECR stated that it was declining the Town's extension request.  (Riverso Decl., Ex. E.)  In March 2007, ECR further advised the Town that it would not perform under the parties' contract after its expiration on March 31, 2007.  (Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12; Compl. ¶ 53.)  Accordingly, as of April 1, 2007, there was no longer a valid, enforceable contract between the parties.

Notwithstanding the absence of a contract, and ECR's refusal to further perform, ECR seeks to recover its lost profits for the two option years that ultimately never came to fruition, from April 1, 2007 through March 31, 2009.  In a similar case cited for support by the Town,

Marketing & Management Information, Inc. v. United States, 62 Fed. Cl. 126 (Fed. Cl. 2004), the plaintiff sought to recover its lost profits for two option years on the parties' contract that the defendant chose not to exercise. See id. at 128. In holding that plaintiff was not entitled to its lost profits for the two option years that were not exercised, the court in Marketing & Management Information held that such damages were "inherently speculative." Id. The court went on to hold that because "it was within the defendant's sole discretion to exercise the option years . . . [d]efendant would have been under no contractual obligation to extend performance." Id. at 130-31. Accordingly, "awarding damages for lost profits for the two option years would result in putting plaintiff in a better position" than it would have been under the contract. Id. Relying on another, similar, case, the Marketing & Management Information court stated that "as a matter of law, damages for unexercised option years are unrecoverable" and plaintiffs are limited to damages flowing from the "base period" of the contract. Id. (citing Hi-Shear Tech. Corp. v. United States, 356 F.3d 1372, 1380 (Fed. Cir. 2004)). Accordingly, "[t]o allow the profits that plaintiff might have made under [a prospective contract] . . . would be basing damages not on [the contract] but on the prospective terms of a nonexistent contract which the [Town] was fully at liberty to reject." Goodstein, 80 N.Y.2d at 373.

ECR argues that "where there is 'no contractual right to a renewal term, . . . the question is purely one of fact, and should be submitted to the jury only if there [i]s evidence in the record that renewal was reasonably likely under the circumstances.'" (Pl. Mem. of Law 23) (citing Koufakis v. Carvel, 425 F.2d 892, 908, 910 (2d Cir. 1970)). According to ECR, "proof that the final option year would have been exercised is overwhelming [here], and more than enough to give rise to a jury question." (Pl. Mem. of Law 23.) ECR is incorrect. While there was a

question as to whether the parties would have renewed their contract in Koufakis - the case on which ECR bases its argument - no such question exists here. The documentary evidence submitted unequivocally demonstrates that while the Town sought to extend the parties' contract in 2007, ECR flatly refused to do so. In addition, upon the expiration of the contract on March 31, 2007, ECR ceased performing its contractual obligations. Accordingly, there is no doubt as to whether the parties would have extended their contract beyond 2007 that requires submission of the issue to a trier of fact.

Based on the foregoing, the Court finds that the contract between the parties ceased on March 31, 2007. ECR refused to perform under the additional option year sought by the Town and therefore, ECR cannot recover on its claim of lost profits from April 1, 2007 to March 31, 2009. Accordingly, the Town is granted summary judgment with respect to ECR's claim for lost profits for the two option years that were not fulfilled and such damages claims are hereby dismissed.

III.  The Westchester Subcontract

ECR also seeks to recover its lost profits under the Westchester Subcontract on the grounds that as a result of the Town's breach of the parties' contract, ECR was forced to abandon the Westchester Subcontract. The Court notes that a claim for such damages is not included anywhere in ECR's Complaint. According to the Town, and which ECR does not dispute, this claim was asserted for the first time in ECR's expert disclosure. (Def. Mem. of Law 4.)

In addition to general contract damages - i.e., damages that flow from the natural and probable consequences of the breach - a plaintiff asserting a breach of contract claim may also

recover "special" or "consequential" damages, which compensate for "additional losses." Lorena Int'l N. Am., Inc. v. Vican Trading, No. 08-CV-2686, 2009 U.S. Dist. LEXIS 56708, at *7 (E.D.N.Y. July 2, 2009) (citing Schonfeld v. Hilliard, 218 F.3d 164, 175 (2d Cir. 2009)); see also GSI Group, Inc. v. Zim Integrated Shipping Servs., Ltd., 562 F. Supp. 2d 503, 508 (S.D.N.Y. 2008). However, such damages "are restricted to those damages which were reasonably foreseen or contemplated by the parties during their negotiations or at the time the contract was executed." GSI Group, 562 F. Supp. 2d at 508 (quoting Command Cinema Corp. v. VCA Labs., Inc., 464 F. Supp. 2d 191, 200 (S.D.N.Y. 2006)) (additional citations omitted); see also Kenford Co., Inc. v. County of Erie, 73 N.Y.2d 312, 319 (1989) (stating that consequential damages "must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting"). The underlying premise for the recovery of consequential damages is that "[t]he party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made." Bi-Economy Market, Inc. v. Harleysville Ins. Co., 10 N.Y.3d 187, 192-93 (2008) (quotation omitted). Consequential damages "'must be proximately caused by the breach'" and must be proven by the party seeking them." Id. (quotation omitted).

In the within action, the parties' contract is completely silent with respect to damages, including consequential damages. "Where the contract is silent on the subject of consequential damages, the court must take a 'common sense' approach, and determine what the parties intended by considering 'the nature, purpose and particular circumstances of the contract known by the parties . . . as well as what liability the defendant fairly may be supposed to have assumed consciously.'" Lorena Int'l, 2009 U.S. Dist. LEXIS 56708, at *8-9 (quoting Schonfeld, 218 F.3d

at 172) (additional citations omitted); see also Kenford, 73 N.Y.2d at 319 (citations omitted). ECR has the burden of proof on this issue. See Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326, 334 (2d Cir. 1993).

In support of its claim, ECR argues that the Town was aware of the Westchester Subcontract because it was listed in the "Information Schedule F" that was annexed to the parties' contract. (Pl. Mem. of Law 25.) ECR further argues that its "Westchester contract was what brought the parties together and a focus of their discussions leading into the contract." (Pl. Mem. of Law 25.) According to ECR, the Town sought it out because it knew of "ECR's experience performing a similar contract specifically for the County of Westchester . . . and heard good things from Westchester about ECR's performance." (Appelget Aff. ¶ 6.) ECR maintains that the Westchester Subcontract was "prominently featured" in its negotiations with the Town "as support for ECR's bid and qualifications." (Appelget Aff. ¶ 7.)

While the Town may have indeed been aware of ECR's Westchester Subcontract, awareness is not the same as reasonable contemplation that the Town would be responsible for any damages incurred by ECR with respect to that contract. There is no evidence in the record before the Court that the parties ever discussed lost profits liability whatsoever, let alone with respect to ECR's separate and distinct Westchester Subcontract. "No case has been found to suggest that defendant[] should be held responsible for *other* contracts that plaintiff would have made [or did make] with *other* parties . . . ." David, 717 F. Supp. at 170 (emphasis in original).

Moreover, assuming that the Westchester Subcontract was the incentive for the within contract, as ECR maintains, this does not constitute evidence that if the within contract should fail, the Westchester Subcontract would also fail. In fact, ECR has not proffered any evidence

whatsoever to support its claim that the Westchester Subcontract "rose or fell" with the within contract. (Pl. R. 56.1 Counter-Statement ¶ 19.) Rather, ECR offers nothing more than the conclusory allegation of its President, Matthew Appelget, that "[w]hen ECR was . . . faced, in 2007, with prohibitive costs and losses stemming from the Town's contamination of agricultural waste, ECR's contract with Westchester was one that ECR could no longer sustain from an operational and business perspective. Thus, the rest of ECR's New York operation ended along with its contract with the Town." (Appelget Aff. ¶ 8.) No factual evidence has been submitted to the Court to support this claim.

For the foregoing reasons, the Court finds that ECR's lost profits under the Westchester Subcontract were not reasonably foreseeable or within the parties' contemplation at the time of contracting. Additionally, ECR has failed to establish adequate facts from which a jury could reasonably infer that the termination of the within contract was the proximate cause for loss or termination of the Westchester Subcontract. Accordingly, as a matter of law, ECR is not entitled to damages with respect to the Westchester Subcontract and the Town's motion for summary judgment with respect to any claim for damages arising from ECR's loss of the Westchester Subcontract is granted.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part.

The parties are directed to appear for a status conference, by telephone, on April 27, 2010 at 11:00 a.m. to discuss what, if any, issues remain for trial.

**SO ORDERED:**

Dated: Central Islip, New York
April 21, 2010

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge