# Exhibit G

# East Coast Resources, LLC
## v.
# Town of Hempstead, New York

**Preliminary Report of Greg S. Bingham**

**The Kenrich Group LLC**

**July 29, 2008**

Greg S. Bingham

# Table Of Contents

I.      Introduction

        A.      Background ........................................................................................................1

        B.      Scope of Analysis ...........................................................................................2

        C.      Summary of Work Performed..........................................................................3


II.     Lost Profits on Hempstead and Other Contracts............................................................4

        A.      Summary of Opinions......................................................................................4

        B.      Description of Key Events ...............................................................................4

        C.      Profit on Hempstead and Other Contracts
                from August 2004 to March 2007....................................................................6

        D.      Lost Profits on Hempstead Contract ................................................................8

        E.      Lost Profits on Other New York Contracts.....................................................10

        F.      Interest on Damage Amounts..........................................................................11


III.    Conclusion ....................................................................................................................12

# Table Of Contents

## Appendices

Primary Documents Reviewed and Interviews Conducted ...........................Appendix A

Resume and Publications of Greg S. Bingham ..............................................Appendix B

Greg S. Bingham Deposition and Trial Testimony since 2003 ....................Appendix C

Rate of Compensation....................................................................................Appendix D

Incurred and Forecasted ECR New York Region
Revenue, Cost and Net Income......................................................................Appendix E

ECR New York Expenses by Category for April 2006 to March 2007.........Appendix F

ECR to Reliable Wood Products Rate Comparison........................................Appendix G

East Coast Resources, LLC v. Town Of Hempstead, New York

Preliminary Expert Report Of Greg S. Bingham

I.     Introduction

   A.     Background

           The Kenrich Group LLC ("Kenrich Group") was retained by Counsel for East
Coast Resources, LLC ("ECR") to perform various accounting, economic, financial, and
damages analyses relating to the litigation between ECR and the Town of Hempstead, New York
("Hempstead"). This Report was prepared by Mr. Greg S. Bingham, a Vice President of The
Kenrich Group LLC.

           The opinions and analysis presented in this Report are based on currently
available information and are preliminary. As information comes to my attention that affects the
opinions expressed in this Report, including an expert report or other information from
Hempstead, I may be asked to supplement this Report. Also, I may supplement this Report with
work papers.   Additionally, I may prepare graphical or illustrative exhibits based on the
documents and information relied upon as well as my analysis of those documents and
information.

           The Kenrich Group is a national consulting firm of accounting, finance,
economics and engineering professionals experienced in the analysis of business operations and
in the evaluation and quantification of damages. In developing the opinions expressed below,
The Kenrich Group has relied on various source documents and other information as identified in
Appendix A of this Report, information from ECR, and from counsel for ECR, as well as the
review of various project-related, pricing and financial documents and reports.

           I am a Vice President with The Kenrich Group.  Prior to joining The Kenrich
Group, I was a Managing Director at Navigant Consulting, Inc., an international consulting firm.
Prior to Navigant Consulting, I was a Vice President at Tucker Alan Inc. and prior that a Vice

East Coast Resources, LLC v. Town Of Hempstead, New York
Preliminary Expert Report Of Greg S. Bingham

President with Peterson Consulting. I am experienced in financial, economic, damage, and accounting matters related to the scope of The Kenrich Group's analysis on this matter. In addition, I have consulted on various litigation matters as well as prepared and analyzed numerous claims involving lost profits and economic damages.

The appendices include the Primary Documents Reviewed by The Kenrich Group (Appendix A), the resume and a list of publications of Greg S. Bingham (Appendix B), a list of Greg S. Bingham's testimony since 2003 (Appendix C), and Greg S. Bingham's rate of compensation (Appendix D).

### B. Scope of Analysis

I was asked to review and analyze documents relating to various accounting, contractual, and performance issues on contract 21-2004[1], awarded to ECR effective July 29, 2004[2] and to quantify the damages associated with lost profits to ECR as a result of certain actions by the Town of Hempstead. In order to assess ECR's damages, I reviewed various documents, interviewed current ECR personnel and analyzed lost profits on this matter.

I was not asked to review or evaluate the damages claimed by Hempstead against ECR, if any, and have not been asked to express an opinion regarding punitive damages. In addition, I have not been asked to review or evaluate damages related to attorneys' fees incurred by ECR on this matter.

---

[1] Defendant's Response to Plaintiff's First Set of Interrogatories – May 6, 2008
[2] Defendant's Response to Plaintiff's First Set of Interrogatories – May 6, 2008

## East Coast Resources, LLC v. Town Of Hempstead, New York
## Preliminary Expert Report Of Greg S. Bingham

### C.  Summary of Work Performed

The work steps performed by The Kenrich Group, with regard to the above scope included: (1) review of ECR's fixed price contract number 21-2004, modifications, and amendments to this subcontract; (2) review and analysis of various accounting information extracted from ECR's accounting system, including total actual costs recorded, and payments from ECR to subcontractors and disposal facilities; (3) review of various complaints and legal filings; (4) conducting interviews of ECR personnel; (5) determine the lost profits suffered by ECR due to actions by Hempstead relating to contract 21-2004; (6) determine the lost profits relating to contracts other than contract 21-2004 suffered by ECR due to actions by Hempstead relating to contract 21-2004; and (7) calculate interest that would be due ECR on the profits it was denied through 1 April 2009.

In connection with my review, I considered the requirements of Generally Accepted Accounting Principles; as well as my understanding of finance and accounting concepts relevant to this matter based on over 20 years of experience. My analysis did not include an audit of incurred costs.

As of this writing, my opinions regarding ECR's claim are preliminary. I have been asked to update my analysis and disclose my then-current opinions after the factual record relating to this dispute has been completed (e.g., after depositions of fact witnesses have been conducted).

East Coast Resources, LLC v. Town Of Hempstead, New York

**Preliminary Expert Report Of Greg S. Bingham**

## II.   Lost Profits on Hempstead Contract

### A.   Summary of Opinions

Because of the actions of the Town of Hempstead, ECR will have suffered lost profits summing to a nominal amount of $952,000 as of 31 March 2009, the date at which ECR's contract with Hempstead would have been completed but for the actions of the Town of Hempstead. Interest on these lost profits to 1 April 2009 will be $99,000. The sum of lost profits and interest is $1,051,000.

### B.   Description of Key Events

Prior to the proposal and award of the Hempstead contract, ECR had performed years of refuse removal and trucking services dating back to 1999.[3] ECR submitted its proposal in April of 2004 to transport and dispose of agricultural waste for Hempstead.[4] The Town of Hempstead awarded contract 21-2004 to ECR in July 2004.[5] The Contract term was two years with options for up to three one-year extensions.[6] The agricultural waste to be transported by ECR was defined in the contract.[7] Hempstead failed to abide by the contractual trash

---

[3] Manta Company Profiles & Research Information: www.manta.com

[4] See ECR contract pages 4-16:
   "...contractor to provide a fleet of tractor trailers to remove all agricultural waste...all materials must be composted/recycled..."

[5] Defendant's Response to Plaintiff's First Set of Interrogatories – May 6, 2008

[6] See ECR contract page 17:
   "The Town proposes a two (2) year contract. Contract year shall begin upon award of the Town Board and run for (2) full years. An extension of the agreement shall be available to the Town at the Town's option. The extension would be for one (1) year intervals but not to exceed three (3) years."

[7] See ECR contract page 16:
   "Agricultural waste under terms of this agreement shall mean grass clippings, leaves, bundles of twigs or branches, brush, tree trunks, logs, stumps, all up to six (6) inches in diameter or larger, holiday trees and wreaths, and other general tree and yard or garden waste. Waste will be delivered by others, loaded by the Town and accepted by contractor in a loose condition or contained in plastic bags."

## East Coast Resources, LLC v. Town Of Hempstead, New York
## Preliminary Expert Report Of Greg S. Bingham

specifications[8] and also refused to adjust its pricing agreement with ECR to compensate ECR for the additional cost of transporting and disposing of "dirty" trash. In June of 2005, Nature's Choice Corporation ("Nature's Choice") created a video recording documenting the condition of trash violations by the Town of Hempstead and notifying ECR that these violations constitute a breach of their operating permit.[9]   Again in March of 2006, both Nature's Choice[10] and Briermere Farms[11] notified ECR of the substandard quality of trash being delivered for disposal. After these notifications, ECR made more formal complaints to Hempstead regarding the trash quality.

In January 2007, well into the Hempstead contract's first option year, the Town of Hempstead communicated its intent to invoke the second option year outlined in the contract. After receiving a notification from Nature's Choice outlining the continued quality of trash problems and announcing a new rate structure for Hempstead's trash, in February ECR declined to service the additional option years at disposal rates which were for "clean" trash.

In April 2007, the Town of Hempstead awarded the agricultural waste removal contract to a new vendor – Reliable Wood Products (RWP) – and declared ECR to be in default of contract 21-2004. The prices paid by Hempstead to RWP were much higher than had been paid to ECR, presumably due to the "dirty" trash contemplated in RWP's contract with the Town of Hempstead. The proposal submitted by RWP in March of 2007 stipulated its plans to use the same disposal and composting facility as ECR (i.e. Nature's Choice), but quoted rates for 2007

---

[8] See Nature's Choice letter dated March 22, 2006:

"Pursuant to the receipt of the Hempstead's Agricultural Waste in the prior two years the contamination of the material in the plastic bags was unacceptable...many plastic bags that contain 100 percent MSW [municipal solid waste] and by no means should have been included in this type of material."

[9] See Nature's Choice letter dated March 22, 2006:

"In June of 2005 I provided you and other representatives of this municipality a DVD that documented the receipt of many plastic bags that contain 100 percent MSW and by no means should have been included in this type of material."

[10] See Nature's Choice letter dated March 22, 2006:

"Pursuant to the receipt of the Hempstead's Agricultural Waste in the prior two years the contamination of the material in the plastic bags was unacceptable..."

[11] See Briermere Farms letter dated March 24, 2006:

"I'm sorry to say that we cannot accept any more material as it was delivered yesterday and today from the Town of Hempstead...We can only accept clean leaves/yard waste."

## East Coast Resources, LLC v. Town Of Hempstead, New York
## Preliminary Expert Report Of Greg S. Bingham

that were 22% higher for bagged trash and 27% higher for unbagged trash than provided for in ECR's contract with the Town of Hempstead.[12]  I have been told that, but for the actions of Hempstead, ECR would have continued to perform its contract with the Town of Hempstead through 31 March 2009.

After losing the Hempstead contract and, I understand, as a direct result of losing the Hempstead contract, ECR was forced to close its New York regional operations. In servicing the Hempstead contract ECR had subcontracted the disposal of agricultural waste to Nature's Choice and Briermere Farms, the two licensed disposal facilities in the area.  With the combination of Hempstead and other contracts, ECR was delivering to Nature's Choice and Briermere Farms a relatively large volume of agricultural waste each month.  I understand that this high-volume relationship with Nature's Choice, as well as local owner-operators of trucks, had provided ECR with contract terms, including pricing terms, which allowed ECR to operate profitably in its New York region. Without the relatively high-volume relationship with Nature's Choice, Briermere Farms, and other key suppliers, ECR's New York regional operations would no longer be profitable.

## C.   Profit on the Hempstead and Other Contracts
## from August 1, 2004 to March 31, 2007

During the time period from August 2004 to March 2007 ECR segregated its recorded costs and revenues into two "regions" – Maryland and New York. ECR's recorded Revenue, Cost and Net Income in its New York region are shown in Table One below for August 2004 to March 2005, April 2005 to March 2006 and April 2006 to March 2007.  This information provides a basis for projections of ECR's revenue, costs and net income in future years.

---

[12]  See Appendix G for the calculated percentage difference in quoted rates between ECR and Reliable Wood Products.

## East Coast Resources, LLC v. Town Of Hempstead, New York
## Preliminary Expert Report Of Greg S. Bingham

Table One – ECR New York Region Revenue, Cost and Net Income

from August 2004 to March 2007[13]

|       | Description          | Aug 2004 to March 2005 | April 2005 to March 2006 | April 2006 to March 2007 |
|-------|----------------------|-----------------------:|-------------------------:|-------------------------:|
| A     | Total Revenue        | $3,044,354             | $3,364,837               | $3,376,291               |
| B     | Total Expenses       | $2,571,409             | $3,092,392               | $2,872,412               |
| C=A-B | Net Income           | $472,944               | $272,445                 | $503,879                 |
| D=C/A | Gross Margin         | 15.5%                  | 8.1%                     | 14.9%                    |
|       |                      |                        |                          |                          |
|       | Hempstead Net Income | $407,533               | $231,240                 | $468,510                 |

During this time period, ECR had two primary contracts in its New York region. These contracts were with the Town of Hempstead and the City of Westchester. For each of the time periods listed in Table One, Hempstead's contract net income was calculated based on the ratio of Hempstead revenue to total revenue of the New York region. Over the entire time period from August 2004 to March 2007, ECR's revenue from the Hempstead contract represented 88% of ECR's total New York region revenue.[14] The calculations used in determining the amounts shown in Table One above are explained in Appendix E – Incurred and Forecasted ECR New York Region Revenue, Cost and Net Income.

---

[13] Source for rows A and B is the ECR Summary Sales Report by Customer and the ECR Annual Profit & Loss Detail Report.
[14] As shown on Appendix E, total ECR New York region revenue over this time period was $3,044,354 plus $3,364,837 plus $3,376,291 equals $9,785,482. Total Hempstead revenue over this time period was $2,623,298 plus $2,855,930 plus $3,139,292 equals $8,618,520. $8,618,520 divided by $9,785,482 yields 88.1%.

## East Coast Resources, LLC v. Town Of Hempstead, New York
## Preliminary Expert Report Of Greg S. Bingham

### D. Lost Profit on the Hempstead Contract

But for the actions of the Town of Hempstead, and based on the assumptions described below, ECR's profits on the Hempstead contract for the time period from April 2007 to March 2009 would have been $885,000. This amount is segregated by year in Table Two below.

Table Two – Forecasted Hempstead Contract Net Income
from April 2007 to March 2009

| Description | April 2007 to March 2008 | April 2008 to March 2009 | Total |
|---|---|---|---|
| Hempstead Net Income | $459,000 | $426,000 | $885,000 |

I have been told that, but for the actions of Hempstead with respect to out-of-specification trash, ECR would have continued to perform its contract with the Town of Hempstead through at least March 2009. Net Income is revenue less expenses and ECR's revenue and expenses were forecasted for the two years ending March 2008 and March 2009. I understand that in the forecasted years, ECR's revenues and costs in its New York region would likely have been generally consistent with its most recent year of performance (i.e., April 2006 to March 2007).[15] Based on this, it was assumed that the tonnage of trash transported and disposed-of as well as the costs incurred by ECR would have been similar in the forecasted years as in ECR's most recent year of performance on the Hempstead contract, with the following

---

[15] Due to operational changes which occurred at ECR in early 2006, ECR's cost history from time periods prior to early 2006 were not used in forecasting future costs. The operational changes related to a shift from primarily using ECR owned or leased trucks and other assets to primarily subcontracting the transportation of agricultural waste to owner-operators of trucks. See Appendix F for a graphic illustrating ECR's New York expenses by category for the year ending March 2007.

## East Coast Resources, LLC v. Town Of Hempstead, New York
## Preliminary Expert Report Of Greg S. Bingham

exceptions: 1) ECR's revenues would have increased due to the Hempstead contract provision allowing an increase in the rates paid by Hempstead based on the U. S. Department of Labor's Consumer Price Index;[16] and 2) ECR's costs would have increased due to the escalation of fuel and other costs.

ECR's revenue on the Hempstead contract in the forecast years was calculated to be 2.57% higher in the year ending March 2008, and 3.94% higher in the year ending March 2009 than in the previous year. These increases are based on the U.S. Department of Labor, Bureau of Labor Statistics, Consumer Price Index for all urban consumers.

For forecasting purposes, ECR's costs were segregated into diesel fuel costs and all other costs. Specific indexes were used to escalate each of these two categories. With regard to ECR's diesel fuel costs, the years ending March 2008 and March 2009 were forecasted to have 19.28% and 53.41% higher fuel costs respectively than in the previous years. These increases were based on the increases calculated by the U.S. Energy Information Administration in the Central Atlantic region for No 2 Diesel Retail Sales.

With regard to ECR's non-fuel costs, the years ending March 2008 and March 2009 were forecasted to have 2.17% and 1.52% higher non-fuel costs respectively than in previous years. These increases were based on the U.S. Department of Labor, Bureau of Labor Statistics, Consumer Price Index for all urban consumers for "All items less food and energy."

The indexes used to escalate ECR's revenues and costs in the forecasted years are summarized in Table Three below.

---

[16] "Price increases for extension years shall be limited to not more than the percentage change in the Consumer Price Index." (Sourced from the "Term" section of contract 21-2004 between ECR and Hempstead).

East Coast Resources, LLC v. Town Of Hempstead, New York

Preliminary Expert Report Of Greg S. Bingham

Table Three – Indexes Used to Escalate ECR Revenues and Costs

| Description | Year Ending March 2008 | Year Ending March 2009 |
|---|---|---|
| Revenue | 2.57% Increase | 3.94% Increase |
| Cost of Diesel Fuel | 19.28% Increase | 53.41% Increase |
| Non-Fuel Cost | 2.17% Increase | 1.52% Increase |

## E. Lost Profits on Other New York Contracts

But for the actions of the Town of Hempstead, and based on the assumptions described below, ECR's lost profits on other contracts in its New York region (i.e., contracts other than the Hempstead contract) for the time period from April 2007 to March 2009 would have been $67,000. The calculation of this amount is shown in Appendix E. This amount is segregated by year in Table Four below.

Table Four – Forecasted "Other" Contract Net Income

from April 2007 to March 2009

| Description | April 2007 to March 2008 | April 2008 to March 2009 | Total |
|---|---|---|---|
| Other Net Income | $35,000 | $32,000 | $67,000 |

I have been told that, but for the actions of Hempstead with respect to out-of-specification trash, ECR would have continued to perform its contract with the Town of Hempstead through at least March 2009. I further understand that in the forecasted years (i.e., April 2007 to March 2009) ECR would likely have continued to acquire and perform other contract work at approximately the same level of tonnage and price as the year ending March

Page 10 of 12

## East Coast Resources, LLC v. Town Of Hempstead, New York
## Preliminary Expert Report Of Greg S. Bingham

2007. In addition, I understand that ECR would likely have been able to achieve generally the level of rate increases as had been specified in the Hempstead contract. In other words, the methods and indexes used to escalate revenues and costs described for Hempstead above also apply to revenues and costs forecasted for ECR's other contracts.

### F.    Interest on Damage Amounts

In order to make ECR economically whole, ECR must also be paid interest on the net income (i.e., profit) it lost from the New York operations. The payment of interest is required in order to compensate ECR for the time value of money from the date of the lost profits to the assumed date of payment to ECR of the damage award. The assumed payment date is 1 April 2009. The interest rate used is a conservative (i.e., low) estimate of ECR's weighted average cost of capital of 10%. The formula used to calculate interest is shown below:

$$\text{Principal} \times (1+\text{interest rate})^n - \text{Principal}$$

As an example, interest is calculated below on the first year of lost profits on the Hempstead contract. The lost profit amount (i.e., principal) is \$459,000. The interest rate is 10%. The term is October 2007 to April 2009, or 1.5 years (i.e., October 2007 is the midpoint between April 2007 and March 2008).

$$\$459,000 \times (1+0.10)^{1.5} - \$459,000 = \$70,544$$

The calculation of interest is shown in Appendix E.

## East Coast Resources, LLC v. Town Of Hempstead, New York
## Preliminary Expert Report Of Greg S. Bingham

### III.   Conclusion

In light of my current understanding of events on the subject contract, I believe that the
lost profits and interest shown in Table Five below to be correct.

Table Five – Summary of Lost Profits Damages and Interest

| Description | Lost Profits | Interest[17] | Total |
|---|---|---|---|
| Lost Profits on Hempstead Contract | $885,000 | $92,000 | $977,000 |
| Lost Profits on Other New York Contracts | $67,000 | $7,000 | $74,000 |
| Total | $952,000 | $99,000 | $1,051,000 |

The opinions and analysis presented in this Report are based on currently available
information and are preliminary.  As information comes to my attention that may affect the
opinions expressed in this Report, including an expert report or other information from the Town
of Hempstead, I may be asked to supplement this Report.

I have reached this opinion by applying my knowledge of finance, economics, and
accounting to the information reviewed and disclosed in this report and in Appendix A to this
report.

---

[17] If payment is received earlier than or later than 1 April 2009, the interest amount should be adjusted.

# Appendix A

# Primary Documents Reviewed

# Appendix A

## East Coast Resources, LLC v. Town of Hempstead, New York

### Primary Documents Reviewed

1. Select East Coast Resources accounting information for 2004 through 2007 including:
   - New York Operations Detailed Profit and Loss Reports
   - New York Operations Detailed Sales Report by Month by Customer
   - New York Operations Summary Sales Report by Month by Customer

2. East Coast Resources Federal Tax Returns for 2003 through 2006

3. East Coast Resources contract proposal 34-2004

4. Various project related correspondence from 2006 and 2007 including:
   - 03/22/06 Letter from Nature's Choice to ECR
   - 03/24/06 Letter from Briermere Farms to ECR
   - 03/24/06 Letter from ECR to Hempstead
   - 03/30/06 Letter from Hempstead to ECR
   - 01/08/07 Letter from Hempstead to ECR
   - 02/09/07 Letter from Nature's Choice to ECR
   - 02/09/07 Letter from ECR to Hempstead
   - 03/13/07 Letter from Hempstead to ECR
   - 03/23/07 Letter from Hempstead to ECR
   - Assorted invoices, work tickets, and associated backup material for ECR's freight and disposal vendors

5. Town of Hempstead resolution no. 407-2007 dated April 17, 2007

6. Reliable Wood Products bid proposal number 9-07 dated March 27, 2007

7. Various interrogatories and legal filings including:
   - "Defendant's Response to Plaintiff's First Set of Interrogatories" dated May 6, 2008
   - "Defendant's Response to Plaintiff's First Set of Production of Documents to Defendant Town of Hempstead" dated May 6, 2008.

# Appendix B

# Resume And Publications Of
# Greg S. Bingham



**Greg S. Bingham**
Vice President

Greg Bingham is a Vice President of The Kenrich Group LLC. He
has 22 years of experience in the field of business and litigation
consulting, primarily for Government Contractors.

**Selected Industry Experience**

Clients have included corporations, partnerships and individuals; in-
house and outside counsel; including plaintiffs, defendants and
judicial bodies. Greg has consulted with government contractors,
construction contractors, public utilities, owners, wholesalers,
retailers, service companies, financial institutions, professional
service firms and public utilities.

**Economic, Damage and Accounting Analyses**

Greg has analyzed and prepared damage claims for lost profits,
increased costs and loss of value. Analyses have included study of
actual and projected revenues; cost of goods; indirect costs; general
and administrative expenses; taxes; discount rates; and various
assets, liabilities and equity accounts.

**Work for Government Contractors**

Greg has provided consulting services and testified on a variety of
government contracts matters involving issues such as cost
accounting, cost estimating, special investigations, regulatory
compliance and contract claims. Greg has assisted clients on
government contract matters including: 1) regulatory consulting
on allowable costs issues arising from the Cost Principles (i.e.,
FAR Part 31) as well as allocation of cost issues associated with
the Cost Accounting Standards ("CAS"), 2) consulting on matters
involving allegations of defective pricing, false claims,
mischarges and other improper billings to the government, 3)
Multiple Award Schedule contracting including the impact of the
General Services Administration ("GSA") contract Price
Reduction clause, 4) financial statement and special purpose
auditing, and 5) management consulting.

**The Kenrich Group LLC**
1200 New Hampshire Avenue, NW
Suite 410
Washington, D.C. 20036
Tel: (202) 420-7682
Fax: (202) 429-5673
E: gbingham@kenrichgroup.com

**Professional History**
- Navigant Consulting, Inc.
  *Managing Director*
- Tucker Alan Inc.
  *Vice President*
- Peterson Consulting
  *Vice President*
- Texaco
  *Senior Engineer*

**Education**
- University of Texas at Austin
  *M.B.A.*
- University of Kentucky
  *B.S. in Electrical Engineering*

**Professional Associations**
- American Bar Association
  o Public Contract and
    Litigation Sections -
    Associate Member
  o Current Vice-Chair of
    Accounting, Cost & Pricing
    Committee of the Public
    Contract Section
  o Active member of several
    other Public Contract Section
    committees
- Association of Certified Fraud
  Examiners
- National Contracts Management
  Association
- National Defense Industrial
  Association



Greg S. Bingham

#### Compliance Issues and Investigations of Whistleblower Allegations

Greg has assisted many companies with transitions. Some examples have included: 1) transitions from no government business to contracting with the federal government; 2) transitions from sale of only "commercial items" (or "commercial services") to sales requiring more complex contractual vehicles; 3) transitions from solely fixed-price work to some cost-reimbursement contracting; 4) transition from modified CAS coverage to full CAS coverage, including preparing CAS disclosure statements; 5) complying with the Earned Value Management System requirement which are more often required of contractors involved in cost-reimbursement contracting; 6) assessing and demonstrating compliance of Material Management and Accounting Systems, including quantification of cost impacts and negotiations with government oversight personnel; and 7) various other compliance issues often relating to the internal controls and operations.

Greg has assisted contractors with various issues relating to Multiple Award Schedule contracting including the impact of the General Services Administration ("GSA") contract Price Reduction clause. His work has included the quantification of cost impacts and negotiation with government auditors and oversight personnel. Greg has planned and performed reviews of various defense contractors' systems including material management, accounting, inventory and internal policies and procedures along with the evaluation of operating inefficiencies and internal control deficiencies.

Greg has assisted counsel on liability, damages and penalty issues on numerous cases filed under the Federal False Claims Act. He has provided formal and informal presentations to the Department of Justice and the Defense Contract Audit Agency regarding defective pricing and false claims issues.

#### Government Contract Terminations

Greg's services have ranged from assisting clients with the preparation of termination settlement proposals on contracts terminated for convenience to assisting counsel in efforts to convert a termination for default to a termination for convenience. The magnitude of matters Greg has assisted companies with has ranged from contract values worth thousands of dollars to contract values in excess of a billion dollars.

#### Construction

Greg has been involved in the review and analysis of numerous construction projects. He has performed analyses to identify and quantify specific events and causes of cost growth and schedule extension. This work has included the analysis of acceleration, delay, disruption, changed scope of work, identification of parties responsible for specific construction events, and lost profits associated with extended schedules.

#### Experience Analyzing Changed Work, Delay and Disruption

Greg has analyzed changed work, delay and disruption on numerous matters including aerospace and defense as well as construction and nuclear utility matters ranging from a few hundred thousand dollars to over a billion dollars. He has assisted contractors in the preparation of requests for equitable adjustment ("REA') and claims as well as analyzing claims and REAs

2



Greg S. Bingham

prepared by others. Greg's work analyzing delay has included the Critical Path Method of analysis as well as less formalized analyses performed in manufacturing or in circumstances where detailed schedule network relationships were not available. Greg has prepared numerous claims that were to be reviewed by government auditors including the Defense Contract Audit Agency ("DCAA"). He is very familiar with the DCAA's Contract Audit Manual and the DCAA's audit programs used for the evaluation of various types of claims. Greg is very experienced in the analysis of disruption and loss of efficiency claims and has quantified the cumulative cost impact of many changes, including presenting his findings in settlement negotiations. He has also quantified the cost impact of unabsorbed and extended overhead numerous times in both construction and manufacturing environments and has presented his findings in settlement negotiations and alternative dispute resolution proceedings.

**Selected Lectures and Seminars**

"Managing Risks Of Potential Government Contract And Construction False Claims," by Avram S. Tucker and Greg S. Bingham. Presented at American Bar Association Public Contract Section March 2007 meeting in Annapolis, MD.

"Sarbanes-Oxley: Impact on Government Contractors," University of Minnesota 42nd Annual National Seminar on Government Contracts, October 2003.

"Recent Cost & Pricing Developments At The Court Of Appeals For The Federal Circuit," American Bar Association Annual Meeting of the Public Contract Section, August 2003.

"Medicare's Diagnosis Related Groups; Coding Compliance Issues" - ABA Public Contract Section Health Care Procurement Committee (1998)

"Termination Of Government Contracts" - Various Groups Including Lockheed Martin Mission Systems (2000), Lockheed Martin Federal Systems (1997), Systems & Electronics Inc. (1995), McDonnell Douglas (1992), And Various Chapters Of The National Contract Management Association (1993 - 1995).

Various Chapters Of The National Contract Management Association - "Electronic Contracting" (1998), "Commercial Item Acquisitions" (1997), "Program And Contract Changes" (1996), "Contract Costs" (1995).

Hosted Panel Discussion Of Claims Strategies And Claims Pricing At American Bar Association Public Contract Section Meeting (1994).

**Selected Publications**

Advisory Board Member of "Government Contracts Costs, Pricing and Accounting Report", Published by Thompson West.

"Administering Subcontracts After A Termination for Convenience" (Briefing Papers, No. 04-4 March 2004), by Patricia Meagher and Mr. Bingham.

3



**Greg S. Bingham**

"Recent Cost & Pricing Developments At The Court Of Appeals For The Federal Circuit," American Bar Association Annual Meeting of the Public Contract Section, August 2003.

"Pricing Changes," Chapter 9 in *Program and Contract Changes*, National Contract Management Association, January 1996.

"Issues Relating to Contract Terminations on Federal Contracts," February 1994.

"Constructive Changes and Change Order Claims on Federal Contracts," Spring 1992.

# Appendix C

# Greg S. Bingham Deposition And Trial Testimony Since 2003

**Appendix C**

# East Coast Resources, LLC v. Town Of Hempstead, New York
## Greg S. Bingham Deposition And Trial Testimony Since 2003

| Case Name | Venue | Year |
|-----------|-------|------|
| United States *ex rel*. Rory Mayberry, et. al., v. Custer Battles LLC, *et al..* (Case No. 1:06cv364 (LO)) | United States District Court, Eastern District of Virginia | 2008 Deposition |
| Envirocon, Inc. v. Brookhaven Science Associates, LLC, Case No. CV 06 3137 (TCP/MLO) | United States District Court, Eastern District of New York | 2008 Reports |
| Pioneer UAV, Investigation of Employee Fraud and Related Accounting Issues | Baltimore, MD | 2008 Report |
| National Academy of Sciences. Investigation of Accounting Issues | Washington, DC | 2007 Report |
| Rigging & Welding Specialists, Inc., vs. DynCorp Technical Services, LLC; Case No. 2004-19666 | The District Court of Harris County, Texas, 234Th Judicial District | 2005 Deposition |
| Protest of EDS Information Systems, L.L.C. (File B-292836.1 – 6), U.S. Department of Housing & Urban Development | General Accounting Office Bid Protest | 2004 Declaratio n |
| Hardware Technologies, Inc. vs. Compaq Computer Corp.; Case No. PJM 00-1015 | In The Federal District Court For The State Of Maryland | 2003 Deposition |
| Night Vision Corp. v. Insight Technology, Inc., Case No. 03-691 (E.D. Va.) | Eastern District of Virginia | 2003 Deposition |
| Bombardier, Inc. vs. Lockheed Martin Canada, Inc. | Private Arbitration | 2002 Report |
| Compaq vs. InaCom | Delaware State Court | 2002 Report |
| InTown Management Group vs. U.S. Department of Housing and Urban Development | Mediation, Federal Bankruptcy Court Atlanta | 2001 Report |
| Raytheon E-Systems vs. Datatape, Inc. | Private Arbitration | 2000 Deposition |

**Appendix D**

**East Coast Resources, LLC v. Town Of Hempstead, New York**
**Greg S. Bingham Rate Of Compensation**

Greg S. Bingham's hourly billing rate is $575 for analysis and testimony in this matter.

# Appendix E

# Incurred and Forecasted ECR New York Region Revenue, Cost and Net Income

## Appendix E - Incurred and Forecasted ECR , /York Region Revenue, Cost and Net Income

| Formula | Description | Incurred | | | Forecasted[4,5] | | Totals Forecasted Amount[6] |
|---|---|---|---|---|---|---|---|
| | | Aug 2004 to March 2005 | April 2005 to March 2006 | April 2006 to March 2007 | April 2007 to March 2008 | April 2008 to March 2009 | |
| A | Total Revenue for NY Operations[1] | $3,044,354 | $3,364,837 | $3,376,291 | $3,463,000 | $3,599,000 | - |
| B | Total Expenses for NY Operations[2] | $2,571,409 | $3,092,392 | $2,872,412 | $2,969,000 | $3,141,000 | - |
| C=A - B | Net Income | $472,944 | $272,445 | $503,879 | $494,000 | $458,000 | - |
| D=C / A | Gross Margin | 15.5% | 8.1% | 14.9% | 14.3% | 12.7% | - |
| E | Hempstead Contract Revenue[1] | $2,623,298 | $2,855,930 | $3,139,292 | $3,220,000 | $3,347,000 | - |
| F=E / A | Hempstead Revenue as % of Total Revenue | 86.2% | 84.9% | 93.0% | 93.0% | 93.0% | - |
| G=F x C | Estimated Hempstead Net Income[3] | $407,533 | $231,240 | $468,510 | $459,000 | $426,000 | $885,000 |
| H=C - G | Net Income from Other NY Operations | $65,412 | $41,205 | $35,370 | $35,000 | $32,000 | $67,000 |
| I | Accrued Interest from Hempstead[7] | NA | NA | NA | $71,000 | $21,000 | $92,000 |
| J | Accrued Interest from Other NY Operations[7] | NA | NA | NA | $5,000 | $2,000 | $7,000 |

$1,051,000

1 - Source for information from August 2004 to March 2007 is ECR Summary Sales Reports by Customer.  The amounts shown for the forecasted years ending March 2008 and March 2009 represent an annual increase of 2.57% and 3.94% respectively over the contract year April 2006 to March 2007 in accordance with the Consumer Price Index as reported by the US Department of Labor.  These percentages are based on the contractual increase provided for in ECR's contract with Hempstead.  According to ECR personnel, the increase provided for in the Hempstead contract is typical of contracts of this nature.

2 - Source for information from August 2004 to March 2007 is ECR Annual Profit & Loss Detail reports.  The calculation of ECR's costs in the forecasted years was segregated into fuel costs and all other costs.  Fuel costs were escalated in accordance with diesel price increases reported by US Energy Information Administration.  All non-fuel costs were escalated in accordance with the Consumer Price Index less Food and Energy as reported by the US Department of Labor.  See page 2 for the calculation of these forecasted cost figures.

3 - ECR segregates its recorded costs and revenues into two "regions" -- Maryland and New York.  During the relevant time period ECR had two primary contracts in its New York region.  These contracts were with the Town of Hempstead and the City of Westchester.  According to knowledgeable ECR personnel the ratio of Hempstead net income to total New York net income was approximately the same as the ratio of Hempstead revenue to total New York revenue.

4 - Forecasted figures are rounded to the nearest $1,000.

5 - Forecasted performance is assumed to resemble the most recently recorded data.  Forecast is derived from actual experience recorded in the April 2006 to March 2007 contract year adjusted for CPI and fuel cost increases.  Operational changes and option year pricing increases provided for in the contract differentiate the April 2006 to March 2007 year from previous years.

6 - Forecasted net income and interest figures are shown in nominal dollars before tax.

7 - In order to make ECR economically whole, ECR should be paid interest on its lost profits foregone in the past (e.g., annual lost profits from April 2007 to the assumed payment date).  The assumed payment date is 1 April 2009.  The interest rate used is the assumed weighted average cost of capital for a company of ECR's size.  The weighted average cost of capital used is 10%, which is a conservative assumption.  The formula used for calculating interest is: interest payment = principal*(1+interest rate)^n terms - principal.  The contractual year midpoint month of October was used for interest calculations making April 2007 to March 2008 a 1 1/2 year term and April 2008 to March 2009 a 1/2 year term for interest payments.

**Appendix E - Incurred and Forecasted ECR New York Region Revenue, Cost and Net Income**

| Formula | Description | April 2006 to March 2007 |
|---|---|---|
| A | Total New York Region Expenses[1] | $2,872,412 |
| B | Freight and Disposal Costs[1] | $2,799,955 |
| C=A-B | NY Expenses Less Freight and Disposal Costs | $72,457 |
| D | NY Fuel Costs[1] | $7,790 |
| E=D/C | Fuel Costs as a percentage of Expenses Less Freight and Disposal Costs | 10.75% |
| F | Freight Costs[1] | $1,826,038 |
| G=F*E | Fuel Cost portion of Freight Costs | $196,325 |
| H=D+G | Total Fuel Costs | $204,115 |
| I=A-H | Total Remaining Non-fuel Costs | $2,668,297 |
| J | Percent Change in CPI for all items less food & energy (see pg. 3, row I) | 2.17% |
| K | Percent Change in Diesel Fuel Prices (see pg. 3, row O) | 19.28% |

| Formula | Description | April 2007 to March 2008 |
|---|---|---|
| L=H*K | Fuel Cost Adjustments | $39,000 |
| M=I*J | Remaining Cost CPI Adjustment | $58,000 |
| N=A+L+M | Total Adjusted Expenses for April 2007 to March 2008 | $2,969,000 |
| O=H+L | Total Fuel Costs | $243,000 |
| P=I+M | Total Remaining Non-fuel Costs | $2,726,000 |
| Q | Percent Change in CPI for all items less food & energy (see pg. 3, row L) | 1.52% |
| R | Percent Change in Diesel Fuel Prices (see pg. 3, row R) | 53.41% |

| Formula | Description | April 2008 to March 2009 |
|---|---|---|
| S=O*R | Fuel Cost Adjustments | $130,000 |
| T=P*Q | Remaining Cost CPI Adjustment | $42,000 |
| U=N+S+T | Total Adjusted Expenses for April 2008 to March 2009 | $3,141,000 |

1 - Source for information is from ECR Annual Profit & Loss Detail reports.

# Appendix E - Incurred and Forecasted ECR New York Region Revenue, Cost and Net Income

| Formula | Description | Reported |
|---|---|---|
| A | Consumer Price Index (CPI) for all Urban Consumers as of April 2006[1] | 201.500 |
| B | CPI for all Urban Consumers as of April 2007[1] | 206.686 |
| C=(B-A)/A | Percent Change in the CPI from April 2006 to April 2007 | 2.57% |
| | | |
| D | CPI for all Urban Consumers as of April 2007[1] | 206.686 |
| E | CPI for all Urban Consumers as of April 2008[1] | 214.823 |
| F=(E-D)/D | Percent Change in the CPI from April 2007 to April 2008 | 3.94% |

| Formula | Description | Reported |
|---|---|---|
| G | CPI for all items less food & energy as of October 2006[2] | 207.800 |
| H | CPI for all items less food & energy as of October 2007[2] | 212.318 |
| I=(H-G)/G | Percent Change in the CPI from October 2006 to October 2007 | 2.17% |
| | | |
| J | CPI for all items less food & energy as of October 2007[2] | 212.318 |
| K | CPI for all items less food & energy as of June 2008[2] | 215.553 |
| L=(K-J)/J | Percent Change in the CPI from October 2007 to June 2008 | 1.52% |

| Formula | Description | Reported |
|---|---|---|
| M | Central Atlantic Diesel Retail Sales (Cents per Gallon) as of October 2006[3] | 265.600 |
| N | Central Atlantic Diesel Retail Sales (Cents per Gallon) as of October 2007[3] | 316.800 |
| O=(N-M)/M | Percent Change in Diesel Fuel Prices from October 2006 to October 2007 | 19.28% |
| | | |
| P | Central Atlantic Diesel Retail Sales (Cents per Gallon) as of October 2007[3] | 316.800 |
| Q | Central Atlantic Diesel Retail Sales (Cents per Gallon) as of July 2008[3] | 486.000 |
| R=(Q-P)/P | Percent Change in Diesel Fuel Prices from October 2007 to July 2008 | 53.41% |

1 - U.S. Department of Labor, Bureau of Labor Statistics, sourced on July 11th, 2008.

2 - U.S. Department of Labor, Bureau of Labor Statistics, sourced on July 25th, 2008.  June 2008 was the last month for which this index (i.e. Consumer Price Index for all items less food & energy) was available by the U.S Department of Labor, Bureau of Labor Statistics prior to the date of this Report.

3 - U.S. Energy Information Administration, sourced on July 29th, 2008.  July 2008 was the last month for which this index (i.e. Central Atlantic No 2 Diesel Retail Sales) was available by the U.S. Energy Information Administration prior to the date of this Report.

# Appendix F

# ECR New York Expenses by Category for April 2006 to March 2007



Appendix F - Cost Breakdow... for April 2006 to March 2007

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 63.57% | 33.91% | 0.67% | 0.30% | 0.37% | 0.31% | 0.87% |
| $1,826,038.14 | $973,916.58 | $19,144.60 | $8,726.60 | $10,763.16 | $8,901.93 | $24,920.83 |
| Freight | Disposal | Truck Costs | Insurance | Taxes - Other | Company Cars | Other |

■ Costs as a Percentage of Total Expense

70.00%
60.00%
50.00%
40.00%
30.00%
20.00%
10.00%
0.00%

Page 1 of 1

# Appendix G

# ECR to Reliable Wood Products Rate Comparison

**Appendix G - Comparison of Prices Paid to ECR and Prices Paid to Reliable Wood Products**

| Formulas | Description | Unbagged Trash | Bagged Trash |
|---|---|---|---|
| A | ECR rates for initial option year of April 2006 to March 2007 (price per ton)[1] | $33.85 | $49.89 |
| B | Percent Change in the Consumer Price Index from 2006 to 2007[2] | 2.57% | 2.57% |
| C=A*(1+B) | ECR calculated rate for the option year April 2007 to March 2008 | $34.72 | $51.17 |
| D | Reliable Wood Products (RWP) quoted rate for April 2007 to March 2008[3] | $44.22 | $62.22 |
| E=D-C | Difference | $9.50 | $11.05 |
| F=E/C | Percent Difference in Pricing | 27.36% | 21.59% |

1 - Source for information from ECR Detail Sales Reports by Customer.  The amounts shown were used as the adjusted per ton billing rates for April 2006 to March 2007.

2 - U.S. Department of Labor, Bureau of Labor Statistics, sourced on July 11th, 2008.

3 - See RWP contract page SC-4 for bid price per ton of bagged and unbagged waste.